McGHEE v BHAMA

Docket No. 74036. Submitted July 17, 1984, at Detroit.—Decided
January 2, 1985. Leave to appeal applied for.

Gregory Watkins hanged himself while he was a patient at
Clinton Valley Center, a mental hospital operated by the
Michigan Department of Mental Health. As a result, Watkins
was in a coma for approximately 18 months, after which he
died. While Watkins was in the coma, plaintiff, Akiko McGhee,
individually and as guardian of the estate of Watkins, brought
an action for medical malpractice against Savitri Bhama, M.D.
and Jacinto Anaya, M.D., both of whom are psychiatrists
employed at Clinton Valley Center. Defendants filed motions
for summary judgment based upon governmental immunity
from tort liability. The motions were granted, Oakland Circuit
Court, Robert L. Templin, J. Plaintiff appealed, alleging that
statutory governmental immunity is inapplicable to individual
defendants and that common-law immunity should be abolished
or, alternatively, that the trial court erred by applying the
"scope of employment" test to determine whether the defen-
dants were protected by immunity. *Held:*

1. While various panels of the Court of Appeals have split on
the scope of immunity and on the manner of the test to apply,
it is clear that official immunity for individual employees
survives.

2. The proper test for determination of whether a state
employee is protected by governmental immunity is the "scope
of employment" test, which looks to whether the specific activ-
ity alleged as a tortious act falls within the scope of the
governmental function performed by the employee.

3. As to defendant Anaya, it makes no difference which test
is employed, because there was uncontroverted evidence that
no physician-patient relationship existed between Anaya and
Watkins.

4. Defendant Bhama, as an employee of a state mental
hospital, the operation of which is a governmental function,

REFERENCES FOR POINTS IN HEADNOTE
57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 42 *et
seq.,* 99.
Governmental or proprietary nature of function. 40 ALR2d 927.

was immune from tort liability, under the scope of employment test, in her treatment of Watkins.

Affirmed.

V. J. BRENNAN, P.J., concurred in the result only.

GOVERNMENTAL IMMUNITY — STATE EMPLOYEES — SCOPE OF EMPLOY-
MENT.

The "scope of employment" test, which looks to whether the specific activity alleged to be a tortious act by a governmental employee falls within the scope of the governmental function, is the proper standard by which to judge the liability of state employees for actions performed while engaged in a governmental function.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *David K. Barnes, Jr.*), for plaintiff.

*Charles C. Warner,* for defendant Bhama.

*Patterson & Patterson, Whitfield, Manikoff, Ternan & White* (by *Richard A. Patterson*), for defendant Anaya.

Before: V. J. BRENNAN, P.J., and ALLEN and GRIBBS, JJ.

ALLEN, J. In this action for medical malpractice brought against two psychiatrists employed by the Department of Mental Health of the State of Michigan, plaintiff appeals as of right from a grant of defendants' motions for summary judgment pursuant to GCR 1963, 117.2(3) for failure to state a claim in avoidance of the statute on governmental immunity, MCL 691.1407; MSA 3.996(107).

On March 23, 1982, plaintiff's decedent, Gregory Watkins, then age 20, was admitted to the Clinton Valley Center, a mental hospital in Pontiac which is operated by the Michigan Department of Mental Health. On May 9, 1982, while still a patient there, Gregory attempted suicide by hanging him-

self in the bathroom using his shirt as a noose. Resuscitated by hospital personnel, he nevertheless suffered severe brain damage caused by the lack of oxygen. Thrust into a deep coma from which he never awoke, Gregory died December 14, 1983.

Medical records disclose that Gregory had been admitted to the Clinton Valley Center on several prior occasions for abnormal behavior and that his final admission on March 23, 1982, was because he had attempted to set fire to a house while other family members were sleeping inside. Further, during his last admission, Gregory attempted to kill himself on two occasions prior to his attempt on May 9.

Plaintiff's complaint for malpractice was filed March 23, 1983, while Gregory was still in a coma.[1] Defendant Anaya answered April 29, 1983, and answered interrogatories filed by plaintiff in May, 1983. Defendant Bhama answered June 19, 1983, also filing a request for admissions by plaintiff, which were answered timely. Bhama filed a motion for summary judgment pursuant to GCR 1963, 117.2(3) on July 7, 1983, as did Anaya on July 27, 1983. Following plaintiff's July 29, 1983, response to the summary judgment motions, summary judgment was granted by the trial judge after arguments on the motion were heard on September 8, 1983.

On appeal plaintiff asserts that statutory governmental immunity is inapplicable to individual defendants and that common-law immunity should be abolished. In the alternative, plaintiff argues that the trial judge erred in applying the "scope of employment" test, because he should have applied

[1] If this matter is remanded to the circuit court for trial, plaintiff proposes to amend the complaint to reflect that the suit is now a wrongful death action.

either (1) the "ministerial/discretionary" test, or (2) found under the "scope of employment" test that the defendants' duty was not one dependent on public employment. Lastly, plaintiff contends that the case was not ripe for summary judgment because she had insufficient time to conduct full discovery on the issue of the precise nature of the defendants' duties at the state hospital.

Both defendants argue that the trial court was correct in applying governmental immunity to them as individual governmental employees. They also assert that under either the "ministerial/discretionary" test or the "scope of employment" test the trial court properly found them immune. Defendant Anaya also contends that he had no physician-patient relationship with Watkins and was merely an administrative supervisor over defendant Bhama and was thus immune.

The governmental immunity statute, MCL 691.1407; MSA 3.996(107), provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

Plaintiff asserts that the statute, by its very terms, applies only to the state and governmental agencies. Plaintiff posits that, because the Legislature did not make the statute expressly applicable to individual employees, the Supreme Court and this Court have erroneously applied the provision to governmental employees in recent cases. In an excellent and comprehensive brief, plaintiff traces the path of official immunity from the passage of

the 1970 amendment, first citing *Galli v Kirkeby,* 398 Mich 527; 248 NW2d 149 (1976), to the multiple opinions of individual justices in *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979), and *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979). It is plaintiff's theory that by the combination of the separate opinions of four justices "common law governmental immunity for individual employees rose from the dead".

In response, defendants concede that confusion is present in *Bush* and *Lockaby,* but assert that the confusion relates to the scope and breadth of immunity and the test to be applied and not to its existence at all. Defendants argue that this Court's decision in *Pomilee v City of Detroit,* 121 Mich App 121; 328 NW2d 595 (1982), *lv pending,* is authoritative. *Pomilee* was relied upon by the lower court in the present case, and holds that not only are governmental employees immune, but that employees of state mental hospitals have been expressly held to be immune.

We agree with defendants on this issue. While little else is certain from *Bush* and *Lockaby,* it is clear that some form of official immunity for employees in their individual capacity survives, whether it does so via the common law or MCL 691.1407; MSA 3.996(107). While the panels of this Court are split on the scope and manner of the test to apply, no panel has ever held that official immunity is dead. Any such pronouncement should come from the Supreme Court.

In granting the motion for summary judgment, the trial judge in a bench opinion said:

"Well, thank you, Counsel. You have briefed this well and certainly argued it well; this is a question of law where the appellate courts are quite divided and the Supreme Court as yet has not addressed itself to this

particular issue. I think Mr. Barnes could well be right that when the Supreme Court does address the issue they may indeed narrow it but, at this time, I am not going to anticipate what they're going to do. I can only go with what I have before me from the appellate court decisions and, while they are divided to some degree, this Court feels that the best reasoning was brought out in the *Pomilee* case, being *Pomilee v Detroit,* 121 Mich App 121, a 1982 case, in which they more or less do away with the discretionary ministerial dichotomy test and indicate that very little of what a medical doctor or psychiatrist ever does is ministerial. Also, coupled with that is the *Williamson [v Jones,* 125 Mich App 433; 336 NW2d 489 (1983)] case which seems to take off on the fact that the scope of employment should be the main test; that, to me, seems to be the better reasoning at this time. The majority of the appellate court decisions seem to favor the immunity of medical institution employees in cases such as this. For those reasons I'm going to grant the motion."

Plaintiff argues that the trial court erred by applying the "scope of employment" test. According to plaintiff, the better reasoning supports application of the "ministerial-discretionary" test, or, if not that, at least a finding that the psychiatrists' duties were not dependent upon public employment, since private-sector psychiatrists perform the same duties as state-employed psychiatrists.

As was stated by the trial judge, this Court has come to divergent conclusions as to the proper standard to be employed in determining the liability of a governmental employee who engages in an admittedly governmental function. Three tests have been used in various forms and combinations by the Michigan appellate courts. The "public/private duty" test holds that an act that breaches only a public duty is not tortious. Once it is determined, however, that the act breaches a duty to a particular individual, then a further inquiry

must be made. Cases in this Court utilizing the "public/private duty" test include *Rose v Mackie,* 22 Mich App 463; 177 NW2d 633 (1970), *lv den* 383 Mich 787 (1970); and *Nichols v Zera,* 33 Mich App 274; 189 NW2d 751 (1971), *lv den* 385 Mich 767 (1971).

The "scope of employment" test looks to whether the specific activity alleged as a tortious act by the employee falls within the scope of the governmental function. By far, the greater number of panels of this Court support the "scope of employment" test. *Custard v McCue,* 124 Mich App 612, 617; 335 NW2d 104 (1983); *lv pending; Young v Robin,* 122 Mich App 84, 87; 329 NW2d 430 (1982); *Gaston v Becker,* 111 Mich App 692; 314 NW2d 728 (1981); *Shwary v Cranetrol Corp,* 119 Mich App 736; 326 NW2d 627 (1982).

Two recent decisions by the Court of Appeals have introduced new variations in the "scope of employment" and "ministerial/discretionary" tests. *Davis v Lhim,* 124 Mich App 291; 335 NW2d 481 (1983); *Fisher v Dep't of Mental Health,* 128 Mich App 72; 339 NW2d 692 (1983), *lv pending.* In *Davis,* a decision provoking criticism from later panels, the Court combined the "public/private duty" test with the "scope of employment" test to pronounce a new test—the "duty dependent upon public employment" test—to affirm a jury verdict finding a psychiatrist liable for the discharge of a mental patient who subsequently killed his mother. In so doing, the majority concluded that a private duty was owed to plaintiff's decedent individually, and not just a duty owed to the public in general.

"The defendant's duty to use reasonable care in the discharge of patients is not dependent upon his position at a state institution. All psychiatrists, whether em-

ployed by a state institution or private facility, are subject to a duty to exercise competent, professional judgment in all aspects of treatment of their patients, including the decision to discharge a patient from custodial care. Consequently, defendant is not immune from liability for negligent discharge." 124 Mich App 297.

The "duty dependent upon public employment" test was reaffirmed in Judge MAHER's concurring opinion in *Fisher, supra.*

*Fisher* applies the "ministerial/discretionary" test, but defines it in a new manner by limiting immunity protection under discretionary decisions to those related to legislating, judging, or executing governmental decisions or policies. The case involved an individual who allegedly was erroneously committed for more than 22 years to state hospitals. In addition to the institutional defendants, 17 doctors were joined on counts of malpractice. Concluding that the "scope of employment" test "unreasonably expands the common-law protection of absolute immunity from tort liability to governmental employees" the *Fisher* panel concluded:

"[A]bsolute immunity from tort liability does not extend to public employees who must exercise any manner of discretion as a public employee if the nature of that discretion is not related to legislating, judging, or executing governmental decisions or policies." 128 Mich App 84.

However, *Hamilton v Reynolds,* 129 Mich App 375; 341 NW2d 152 (1983), decided three weeks after *Fisher,* ignored the *Fisher* qualifications and returned to the mainstream reliance on the "scope of employment" test.[2] Further, in *Adams v North-*

---

[2] For a further review of appellate decisions respecting immunity see: Braden, *The King's Servants Can Do No Wrong?,* 63 MBJ 135 (1984).

*ville State Hospital,* 131 Mich App 583; 345 NW2d 207 (1983), Northville State Hospital employees were granted immunity on charges of failing to properly diagnose and treat a mental patient. In so doing, the Court expressly rejected *Davis.*[3]

With the above state of the law in mind, we turn to its application in the case before us. Not surprisingly, plaintiff argues that, even if this panel chooses to adhere to the "scope of employment" standard, we do so with the qualification advanced in *Fisher,* and if not, that we follow *Davis* and apply the "duty dependent" threshold test. We decline the invitation.

As to Dr. Anaya, it makes no difference which of the several tests are employed. Anaya filed an affidavit with his motion for summary judgment, denying any physician-patient relationship and admitting to his administrative supervision of defendant Bhama. At the summary judgment motion Anaya's attorney stated:

"In addition, as I've pointed out in my motion and my brief and as is disclosed by the affidavit of Dr. Anaya, he was not at this time nor did he ever have a physician-patient—direct physician-patient—relationship with plaintiff's ward, Gregory Watkins. He was the supervisor of Dr. Bhama in administrative matters only. There is a hierarchy of authority in the Clinton Valley Center. He had no direct input or decision-making on the care of this particular patient. He was merely a supervisor of that ward in which Dr. Bhama was employed. And, I think again on that basis, there being an affidavit which states no physician-patient relationship and nothing that can be brought forward

---

[3] "We realize that *Davis v Lhim,* 124 Mich App 291, 296; 335 NW2d 481 (1983), substantially narrowed this test: * * * However, without clearer guidance from the Supreme Court, we decline to follow this radical change from the present law. Such a test comes dangerously close to judicially eliminating the statutorily imposed immunity." 131 Mich App 585, fn 1.

to oppose that, on that basis, too, Dr. Anaya should be dismissed."

Plaintiff's attorney made no effort to counter Anaya's affidavit, either before or during the hearing on the summary judgment motion. Based on the affidavit, Anaya exercised neither a discretionary nor a ministerial role as to the decedent. Further, even if the *Fisher* qualification to the discretionary threshold is added, it is undisputed that Anaya acted only in an "executive" capacity on behalf of the hospital. Accordingly, he would be protected by immunity even under *Fisher.*

As to Dr. Bhama, it does make a difference whether the unqualified "scope of employment" or "ministerial/discretionary" tests or the innovations developed in *Davis* or *Fisher* are followed. However, all members[4] of this panel now follow the "scope of employment" test. Despite the general excellence of plaintiff's brief, we think it inadvisable, in the absence of a change of position by the Supreme Court as to the liability of the state, to change our position. Under current law, the operation of a mental hospital is a governmental function and the Department of Mental Health falls within the umbrella of immunity. *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978), *reh den* 406 Mich 1118 (1979), *app dis* 444 US 804; 100 S Ct 24; 62 L Ed 2d 17 (1979). As long as this remains so, we believe it unwise for this Court to rule that its employees are liable. To do so, to us, would impose liability upside down. Though the state with its vast re-

---

[4] In *Cook v Bennett,* 94 Mich App 93; 288 NW2d 609 (1979), Judge BRENNAN followed the discretionary/ministerial test. Believing that the more sound approach was to utilize the scope of employment test, Judge BRENNAN employed this test in *Boulet v Brunswick Corp,* 126 Mich App 240; 336 NW2d 904 (1983).

sources would be granted immunity, its individual employees would be held responsible. We do not believe this is what the Legislature intended. This fact, plus this Court's decision in *Pomilee v City of Detroit,* 121 Mich App 121; 328 NW2d 595 (1982), *lv pending,* that state-employed psychiatrists are immune regardless of whether the scope of employment or ministerial/discretionary test is applied, and the reluctance of other panels to follow either *Davis* or *Fisher,* leads us to conclude that until the Supreme Court holds otherwise the scope of employment standard is the proper standard by which to judge the liability of state employees for actions performed while engaging in a governmental function. Our decision in this regard makes it unnecessary to address plaintiff's remaining issue.

Affirmed.

V. J. B<small>RENNAN</small>, P.J., concurs in result only.